**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Sue Sallee,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-17-04504-PHX-DWL<br><br>**ORDER** |

## INTRODUCTION

Plaintiff Debra Sue Sallee ("Sallee") seeks review under 42 U.S.C. § 405(g) of the final decision of the Acting Commissioner of Social Security ("Commissioner"), which denied her application for disability benefits and supplemental security income. For the following reasons, the Court finds that the administrative law judge's ("ALJ") decision was based on reversible legal error and remands for further proceedings.

Sallee is a 50-year-old woman who previously worked as an accounts payable clerk and a customer service representative and alleges she became disabled in March 2013. In 2014, she filed applications for disability benefits and supplemental security income. (A.R. 198-207.) Her claims were initially denied on June 12, 2014 (A.R. 68-69) and again upon reconsideration on November 18, 2014 (A.R. 98-99). Sallee then filed a written request for a hearing on December 4, 2014. (A.R. 153-154.) On June 15, 2016, she appeared and testified at a video hearing at which an impartial vocational expert also appeared and testified. (A.R. 42-67.) On July 7, 2016, the ALJ issued a decision that Sallee was not

disabled within the meaning of the Social Security Act. (A.R. 23-35.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Sallee's request for review on October 5, 2017. (A.R. 1-6.)

## LEGAL STANDARD

The Court addresses only the issues raised by the claimant in the appeal from the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). The Court should uphold the ALJ's decision "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* Put another way, "[i]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The Court should uphold the ALJ's decision "[w]here evidence is susceptible to more than one rational interpretation," but the Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citations and internal quotation marks omitted).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Id.* (citations and internal quotation marks omitted). The Court must "look at the record as a whole to determine whether the error alters the outcome of the case." *Id.* Importantly, however, the Court may not uphold an ALJ's decision on a ground not actually relied on by the ALJ. *Id.* at 1121.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R.

§ 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. pt. 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, which addresses whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled.

## BACKGROUND

At step one, the ALJ found that Sallee met the insured status requirements of the Social Security Act through December 31, 2018 and had not engaged in substantial gainful activity since March 8, 2013, the alleged onset date. (A.R. 25.) At step two, the ALJ found that Sallee had the following severe impairments: bipolar disorder, depression, and anxiety disorder. (A.R. 26.) The ALJ also found that Sallee had the non-severe impairments of interstitial cystitis, obesity, and high blood pressure. (*Id.*) At step three, the ALJ determined that Sallee did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (A.R. 26-28.) At step four, the ALJ found that Sallee had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple routine and repetitive tasks, with only occasional interaction with the public. (A.R. 28-33.) The ALJ further found that Sallee was not capable of performing any past relevant work. (A.R. 33.) At step five, the ALJ found that, considering Sallee's age, education,

work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Sallee can perform, including janitor and dishwasher. (A.R. 33-34.)

Sallee argues that the ALJ's decision is defective for four reasons: (1) the ALJ erred during step four by rejecting Sallee's symptom testimony; (2) the ALJ erred during step four by assigning "great weight" to state agency consultants; (3) the ALJ erred during step two in finding Sallee's interstitial cystitis was not a severe impairment; and (4) the ALJ erred during step five in only limiting Sallee's mental work capacities to work that involves simple, routine, and repetitive tasks. (Doc. 15.)

As explained below, the Court agrees with Sallee that the ALJ committed reversible error when evaluating the severity of her interstitial cystitis and when rejecting her symptom testimony. Given these conclusions, it is unnecessary to resolve Sallee's remaining assignments of error, because they pertain to later stages of the five-step process and the ALJ's analysis during those stages may be different on remand.

**ANALYSIS**

I. <u>Whether the ALJ Erred in Finding Sallee's Interstitial Cystitis Was Not Severe</u>

At step two, the ALJ considers whether the claimant has a "severe disability," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individuals [sic] ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted).

The ALJ based her finding that Sallee's interstitial cystitis was not severe on the fact that Sallee was diagnosed with the condition in 2000 and "[t]here is nothing on the record to indicate that [her] Interstitial Cystitis has worsened since the initial diagnosis." (A.R. 26.) The ALJ concluded, therefore, that this condition "ha[d] no more than minimal limitation on her ability to perform basic work activities." (*Id.*)

Sallee argues that the ALJ failed to identify any evidentiary support in the record for these conclusions and that the record shows her interstitial cystitis condition did, in fact, get worse following her 2000 diagnosis. (Doc. 15 at 20-21.)

The Court agrees with Sallee. The ALJ failed to cite the record in coming to her conclusion that the condition hadn't worsened since 2000, and Dr. Karlovsky wrote in his June 9, 2016 opinion letter that "[f]ecal incontinence has *recently* become more of a concern." (A.R. 1760, emphasis added.) The ALJ later gave Dr. Karlovskly's opinion "partial weight." (A.R. 30-31.) Furthermore, although Sallee testified at the hearing that she was diagnosed in 2000, she also testified that she now has bowel accidents and these "seem[] to be getting more common now." (A.R. 49.) She further testified that she now uses the restroom at least thirteen times a day, at least five of which are bowel movements. (A.R. 60.) Because the vocational expert testified there would be no work available for an individual who needed unscheduled breaks throughout the day (A.R. 65-66), and Sallee's interstitial cystitis symptoms may have required such breaks, there was not substantial evidence supporting the ALJ's conclusion that this condition had no more than a minimal effect on Sallee's ability to work.

An error at step two is harmless if the ALJ extensively discusses the condition at step four. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). As discussed below, the ALJ did not properly discredit Sallee's testimony regarding her interstitial cystitis during step four. Therefore, this error was not harmless.

II. <u>Whether the ALJ Erred in Rejecting Sallee's Symptom Testimony</u>

    A. **Legal Standard**

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina*, 674 F.3d at 1112. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citations and internal quotation marks omitted). The ALJ found that Sallee had satisfied this first step. (A.R. 29 ["I find that the claimant's medically

determinable impairments could reasonably be expected to cause the alleged symptoms . . . ."].)

If the first step is satisfied, and "there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Molina*, 674 F.3d at 1112 (citations and internal quotation marks omitted). Such testimony can't be rejected simply because it can't be verified by objective medical evidence. 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Here, the ALJ did not find there was evidence of malingering, so she was required to provide "specific, clear and convincing reasons" to reject Sallee's testimony.

"A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and quotation marks omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (citation omitted); *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). "[P]roviding a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Brown-Hunter*, 806 F.3d at 494.

B. **Sallee's Testimony**

With respect to her bipolar disorder, Sallee testified that it causes fogginess and spaciness and makes her anxious and impatient. (A.R. 49, 51, 57.) Additionally, she claimed that it causes lows about once a month lasting for two weeks where she "get[s]

that sinking of [her] gut and [she] [doesn't] want to get out of bed." (A.R. 57.) With respect to her interstitial cystitis, Sallee testified that she "ha[s] pain in [her] pelvic area and mostly in [her] urethra where it feels like [she] ha[s] a urinary tract infection all the time." (A.R. 49.) She also claimed to have flares of pain "three times a week or so" that would last for a "couple of days" and would prevent her from going about her daily activities. (A.R. 62-63.) She further testified that the condition now causes her to have bowel accidents, and she typically uses the restroom around thirteen times a day, at least five of which are bowel movements. (A.R. 49, 60.)

Finally, with respect to her overall capacity to work, Sallee testified that she would be unable to do the jobs that she had done in the past because "[t]hey're just way to[o] overwhelming for [her]" and the jobs "push[ed] her over the edge." (A.R. 55.)

C. **Analysis**

As explained below, although the ALJ provided somewhat specific reasons for rejecting Sallee's testimony as it pertained to the symptoms of her bipolar disorder, those reasons were not sufficiently convincing. Additionally, the ALJ did not meaningfully address Sallee's testimony concerning the symptoms arising from her interstitial cystitis (likely because the ALJ had previously determined this impairment was not severe). These errors were not harmless.

As an initial matter, Sallee is incorrect in her assertion (Doc. 15 at 12) that the ALJ simply offered a "boilerplate finding" in support of the decision to reject her symptom testimony, at least as it pertains to her bipolar disorder. Although the ALJ's order does contain a sentence that might be construed as boilerplate (A.R. 29), that sentence is followed by a fairly detailed discussion of why the ALJ concluded Sallee wasn't credible on this issue. Specifically, the ALJ relied upon (1) evidence that Sallee's condition had improved after she started taking bipolar medication (A.R. 29), (2) the incongruity of Sallee being willing to seek full-time employment but being unwilling to consider jobs requiring night or weekend work (A.R. 29-30), and (3) the fact that Sallee had been able to work at various jobs since her bipolar diagnosis (A.R. 30).

Nevertheless, Sallee is correct that these proffered reasons were insufficiently convincing—even under the deferential standard of review applicable in this context—to justify the rejection of her testimony. For example, in support of the conclusion that Sallee's bipolar disorder had improved since she began receiving treatment, the ALJ cited NP Susan Anderson's letter. (A.R. 29.) That letter, however, provided: "[Sallee's] condition is fragile. Though she has improved with treatment she is unable to work because of her psychiatric conditions." (A.R. 899.) This letter tends to support Sallee's position, not clearly and convincingly contradict it. And although there are other documents in the record that show Sallee's symptoms improved once she started taking medications (A.R. 1002, 1026), these documents are insufficient to discredit Sallee's testimony about the severity of her symptoms. The Ninth Circuit has noted that, with respect to mental health conditions, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment," as "[c]ycles of improvement and debilitating symptoms are a common occurrence." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *cf. Holohan*, 246 F.3d at 1205 ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), is inapposite, as there the claimant told her physician that medication was helping with her physical pain and there was no evidence showing the claimant was subsequently treated for this pain. Here, Sallee continued seeing providers for her bipolar disorder even after telling them that her symptoms improved. The ALJ also cited Sallee's hearing testimony regarding her improvement in some symptoms of bipolar disorder, but because the ALJ didn't connect this to a discrediting of any specific testimony regarding the debilitating effects of the bipolar disorder, this cannot constitute a clear and convincing reason to reject Sallee's testimony.

The ALJ also found that Sallee's attempts to look for full-time employment following her bipolar diagnosis were inconsistent with her disability claims. (A.R. 29-30 (citing A.R. 1109).) But looking for work is not a convincing reason to reject the claimant's

symptom testimony, as it doesn't indicate the claimant can actually work. *Cf. Lewis v. Apfel*, 236 F.3d at 516 ("Lewis's willingness to work more hours was not substantial evidence that he actually could work for twenty hours per week on a sustained basis."); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995), *as amended* (Apr. 9, 1996) ("Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability."); *Lambert v. Berryhill*, 896 F.3d 768, 778-79 (7th Cir. 2018) ("[A] claimant's desire to work is not evidence that the claimant has embellished his limitations . . . . [T]he Social Security system is designed to encourage everyone who can work to do so . . . [a]nd a person who is not certain whether he will qualify for Social Security disability surely has, *and should have*, a strong incentive to keep looking for work and to pursue unemployment compensation as an interim source of income."). The one case cited by the Commissioner to support the ALJ's decision, *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009), is inapposite, as there the ALJ cited as one of many reasons for discounting the claimant's testimony that the claimant had recently worked as a caregiver for two years *and* was looking for work.

Finally, the ALJ also noted that Sallee's "testimony that she ha[d] worked at various jobs since the alleged onset date" was inconsistent with her claims of being completely disabled and unable to work. (A.R. 30.) But these jobs were "help[ing] [her] neighbor water his plants for . . . $10 every week or two weeks" or "[s]ecret shopping online" or doing online customer service forms, and Sallee clarified that she did those online forms only "a few times but that started getting [her] stressed out." (A.R. 48.) "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Here, there is no evidence in the record showing that Sallee spent a substantial part of her day doing these activities; to the contrary, Sallee stated she watered the plants only once every week or two and stopped doing the online tasks almost immediately after trying them.

For the foregoing reasons, the Court concludes the ALJ unjustifiably rejected Sallee's testimony concerning the symptoms of her bipolar disorder.[1]

Additionally, the ALJ disregarded Sallee's testimony concerning the symptoms of her interstitial cystitis. This is a key issue in the case because Sallee testified that this condition typically causes her to use the restroom around thirteen times a day, at least five of which are bowel movements, and the vocational specialist acknowledged that Sallee wouldn't be able to perform the jobs of janitor or dishwasher (the two jobs identified during step five of the ALJ's analysis) or any other jobs if she required "unscheduled breaks throughout the workday." (A.R. 65-66.) The ALJ's order does not address Sallee's testimony on this point with any specificity[2] and thus can't be said to contain "specific, clear and convincing reasons" for rejecting it.

III. Scope of Remand

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). This applies particularly "[i]f additional proceedings can remedy defects in the original administrative proceeding." *Garrison*, 759 F.3d at 1019 (citation omitted). But there is an exception to this rule, known as the "credit-as-true" rule, under which the court may remand with instructions to calculate and award benefits. For this rule to apply, a three-part test must be satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

---

[1] The ALJ also recited all of the opinion evidence in the record in determining that Sallee's symptom testimony was not consistent with the record (A.R. 30-32), but as noted above, "providing a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *Brown-Hunter*, 806 F.3d at 494.

[2] Although the ALJ briefly addressed Sallee's interstitial cystitis in the portion of the order analyzing step two (A.R. 26), this analysis doesn't specifically acknowledge or refute Sallee's testimony concerning the frequency and unpredictability of her bathroom visits.

- 10 -

*Id.* at 1020.

Here, the credit-as-true rule isn't satisfied because further administrative proceedings would serve a useful purpose. In particular, the ALJ should conduct a more comprehensive analysis of whether Sallee's interstitial cystitis qualifies as a severe impairment under step two and a correspondingly more comprehensive analysis of her symptom testimony on that issue. The resolution of those issues may affect how much weight the ALJ decides to give the opinions of the state agency consultants, as well as the ALJ's consideration of whether there are jobs that exist in significant numbers in the national economy that Sallee can perform.

Accordingly, **IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated**, and this case is **remanded** for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 19th day of February, 2019.

Dominic W. Lanza
United States District Judge